UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONNIE JONES,

      Plaintiff,

  v.                                                                                    Case No. 05-C-0966

BADGER METER, INC.,

      Defendant.

**DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. PROCEDURAL BACKGROUND**

On September 8, 2005, Ronnie Jones ("Jones") filed his pro se complaint alleging wrongful termination and discrimination by his former employer, Badger Meter, Inc. ("Badger Meter"). In his complaint, Jones alleges that Badger Meter terminated his employment based on false accusations of harassment brought by a co-worker. He alleges that Badger Meter made no investigation into the allegations against him that formed the basis of his termination. Nowhere in his complaint in this court does Jones allege that he was discriminated against on the basis of race or on the basis of disability. However, and as discussed below, Jones filed a complaint with the EEOC alleging that he was discriminated against on the basis of race and disability. Thus, the court will treat his claim as being one based on race and disability discrimination.

Badger Meter filed its answer in which it denied all allegations of wrongdoing on its part. On May 9, 2006, Badger Meter filed a motion for summary judgment seeking dismissal of the plaintiff's complaint. Pursuant to Civil Local Rule 56.2(b), Jones had thirty days, or until June 8,

2006, to file his response. As of June 30, 2006, Jones had not filed his response. Consequently, on June 30, 2006, this court issued an order granting Jones until July 17, 2006 to file his response. In that same order the court advised Jones that if no response was filed by July 17, 2006, the court would consider Jones to have waived his right to file a response and would base its decision on the record existing at that time. The date of July 17, 2006 has come and gone and Jones has not filed a response to the defendant's motion. Thus, the defendant's motion will be decided on the current record. For the reasons which follow, the defendant's motion will be granted.

## II. FACTUAL BACKGROUND

The defendant's motion for summary judgment was accompanied by, *inter alia*, a brief and a set of proposed findings of fact, in accordance with Civil Local Rule 56.2(a). As stated, the plaintiff has not filed any response to the defendants' submissions, and the time for filing such response has come and gone. *See* Civil L.R. 56.2(b). Accordingly, pursuant to Civil L.R. 56.2(e), the court concludes that there is no genuine material issue as to any of the defendant's proposed findings of fact. Those findings of fact are as follows.

The plaintiff, Ronnie Jones, is an adult resident of the State of Wisconsin, residing at 5923 N. 34th Street, Milwaukee, Wisconsin, 53209. Jones was employed by Badger Meter at all times relevant to this matter. Jones was terminated on March 1, 2005 for violation of Badger Meter's sexual harassment policy.

Badger Meter is a Wisconsin corporation. The corporate offices for Badger Meter are located at 4545 W. Brown Deer Road, Milwaukee, Wisconsin, 53223.

On March 2, 2005, Jones filed a Complaint asserting race and disability discrimination against Badger Meter with the EEOC.

Badger Meter maintains a policy prohibiting sexual harassment in the workplace. Badger Meter has discharged employees for violation of its sexual harassment policy regardless of race or disability.

On September 17, 2003, Lori Baumann-Hoffmeister signed a written complaint alleging sexual harassment against the plaintiff. Jeff Byers, Personnel Manager, received the written allegation of sexual harassment by Ms. Hoffmeister on September 17, 2003. Mr. Byers reviewed Ms. Hoffmeister's allegation of sexual harassment against the plaintiff. Ms. Hoffmeister contended that the plaintiff touched her without her permission on one occasion and attempted to swat her on the rear end on other occasions.

Mr. Byers met with the plaintiff, a union representative, and the Plant Manager to inform the plaintiff that his behavior toward Ms. Hoffmeister was in violation of the Company's sexual harassment policy, was unacceptable and inappropriate and, if continued, would result in his discharge.

On February 18, 2005, Betty Farris, a black female, alleged that the plaintiff sexually harassed her on several occasions. On February 18 and February 25, 2005, Mr. Byers met with Ms. Farris to discuss her allegations of harassment against the plaintiff. Ms. Farris informed Mr. Byers that she was being sexually harassed by the plaintiff. He made repeated sexual comments to her including that he wanted to "eat some hair," and told her that with all of the help he gives her on the line, she should give him "something," and he told her that everyone in the plant knows he is trying to get into her panties.

Ms. Farris told Mr. Byers that the plaintiff repeatedly asked for sexual favors and, when she did not respond, he would screw up the line so that she could not make her meter count. Ms. Farris

3

complained to Mr. Byers that the plaintiff is manipulative and causes conflicts between the women in the Department and touched her once on the rear end.

Ms. Farris informed Mr. Byers that she was ready to quit due to the harassment by the plaintiff.

On March 1, 2005, Mr. Byers, Dave Gardner, and Eugene Gallenberg met with the plaintiff to discuss the sexual harassment complaint of Ms. Farris and plaintiff's employment status. During the March 1, 2005 meeting, Mr. Byers reminded the plaintiff of their previous discussions regarding sexual harassment and Byers' warning that further behavior would result in his discharge. During the March 1, 2005 meeting, Mr. Byers informed the plaintiff that based upon the history of complaints against him and personal discussions that Mr. Byers had had with at least three female employees, the plaintiff's behavior established a pattern of sexual harassment and his employment would be terminated immediately.

The defendant was not informed of nor aware of any disability on the part of the plaintiff.

The defendant has uniformly enforced its sexual harassment policy without regard to race or disability.

### III. SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

4

475 U.S. 574, 587 (1986)) (quoting advisory committee's note to 1963 amendment of Fed. R. Civ. P. 56(e)).  "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).  To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion."  *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.  *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson*, 477 U.S. at 255).  "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'"  *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425).  "The evidence must create more than some metaphysical doubt as to the material facts."  *Albiero v. City of Kankakee*, 246

5

F.3d 927, 932 (7th Cir. 2001) (internal quotations omitted). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail at the summary judgment stage on his race discrimination claim under Title VII, Jones must demonstrate Badger Meter's discriminatory intent under either the "direct" method or the "indirect" method of proof.

A plaintiff proceeding under the "direct method may rely on two types of evidence: direct evidence or circumstantial evidence." *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720 (7th Cir. 2005). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Eiland v. Trinity Hosp.*, 150 F.3d 747, 751 (7th Cir. 1998) (internal quotations omitted). Direct evidence is evidence that may "'be interpreted as an acknowledgment of discriminatory intent by the defendant.'" *Rudin*, 420 F.3d at 720 (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). Simply stated, "[d]irect evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)

6

(quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir.2000)).

A plaintiff may also prevail under the direct method by establishing a "convincing mosaic" of circumstantial evidence that "allows a jury to *infer* intentional discrimination by the decision-maker." *Id.* (emphasis added). Circumstantial evidence "may come in the form of 'suspicious timing, ambiguous statements oral or written, [or] behavior toward or comments directed at other employees in the protected group.'" *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004) (quoting *Troupe*, 20 F.3d at 736). The circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

A plaintiff proceeding under the indirect method, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), must generally show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of a protected class. *See Ineichen v. Ameritech*, 410 F.3d 956, 959 (7th Cir. 2005). "The failure to establish any one of the initial four elements [of a prima facie case] defeats a discrimination claim." *Bio v. Federal Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005).

If the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the decision. *McDonnell Douglas*, 411 U.S. at 802. Then, if the defendant articulates a legitimate, nondiscriminatory reason, the burden of production shifts back to the plaintiff to show that the defendant's explanation was pretextual. *Ineichen*, 410 F.3d at 961. Pretext requires more than a showing that the decision was "mistaken, ill considered or foolish . . . so long as [the employer] honestly believes [in the reason presented],

7

pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). "Pretext is 'a dishonest explanation, a lie rather than an oddity or an error.'" *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (quoting *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir.2000)). Simply put, "pretext means deceit used to cover one's tracks." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th Cir.2001) (internal quotations omitted).

A plaintiff's claim under the Americans with Disabilities Act (the ADA) is addressed in a fashion similar to that in which a claim brought under Title VII is addressed. The ADA forbids certain employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Disability" is in turn defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

To prove that he suffered disability discrimination under the ADA, Jones may proceed under the direct or indirect method of proof. *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). There are two types of permissible evidence under the direct method: direct evidence and circumstantial evidence. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). The former "'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Id*. (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir.

8

2000)). The latter is evidence that "allows a jury to infer intentional discrimination by the decision-maker." *Id*. Stated another way, "to survive a motion for summary judgment, [the plaintiff] is required to present sufficient evidence to allow a rational jury to reasonably conclude that but for [his] . . . disability, [Badger Meter] would not have fired [him]." *Robin*, 200 F.3d at 1089.

"When proceeding under the direct proof method, in order for allegedly discriminatory remarks to 'qualify as direct evidence of discrimination, the plaintiff must show that the remarks were related to the employment decision in question.'" *Id.* (quoting *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1403 (7th Cir. 1996)). To rise to the level of evidence of discrimination under the direct method of proof, disability-related comments must be "contemporaneous with the discharge or causally related to the discharge making process." *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 723 (7th Cir. 1998) (quoting *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir.1996)); *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1293 (7th Cir. 1997) (noting that stray workplace remarks "cannot defeat summary judgment in favor of an employer unless they are both proximate and related to the employment decision in question").

When proceeding under the indirect method of proof, Jones must first establish a prima facie case of discrimination. To do so, Jones must show that (1) he is disabled under the ADA; (2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) he has suffered from an adverse employment decision because of the disability. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Were Jones to put forth a prima facie case, the burden would then shift to Badger Meter to articulate a nondiscriminatory reason for the adverse employment action, i.e., the termination of Jones's employment on March 1, 2005. If Badger Meter were to meet its burden, Jones would then have to prove by a preponderance of the evidence that

9

Badger Meter's proffered reasons were a pretext for intentional discrimination. *Id.* (citing *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 485 (7th Cir. 2002)).

Finally, it is worth noting that, although the burden of production shifts under the *McDonnell Douglas* test, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Simply stated, the plaintiff has failed to offer any evidence in support of his claim, be it direct evidence or circumstantial evidence, and be his claim one based on race discrimination or one based on disability discrimination. The only evidence in the record is that which has been offered by the defendant. That evidence undisputedly demonstrates that Jones's employment was terminated because he was accused of sexually harassing several female co-employees. There is absolutely no evidence that Jones's race or any disability from which Jones claims to have suffered had anything to do with his termination.

To reiterate, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Because the evidence which Badger Meter has presented stands unrefuted, and because that evidence demonstrates that Jones's employment was terminated for non-discriminatory reasons, Badger Meter's motion for summary judgment will be granted and this action will be dismissed.

10

Case 2:05-cv-00966-WEC    Filed 07/20/06    Page 10 of 11    Document 39

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 20th day of July 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge